IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1-11-CR-240-BLW |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARTIN CANTU RUIZ, | |
| Defendant. | |

## INTRODUCTION

The Court has before it a motion to suppress filed by defendant Cantu-Ruiz. The Court held an evidentiary hearing on April 23, 2012, hearing testimony from Officers John Plaza and KayAnn Smith. For the reasons explained below, the Court will deny the motion.

## FACTUAL BACKGROUND

Cantu-Ruiz is charged with unlawful possession of a shotgun. He seeks to suppress the shotgun on the ground that it was seized in a search pursuant to an invalid warrant. In obtaining that warrant, Cantu-Ruiz alleges, the Government omitted crucial facts that, if revealed to the issuing magistrate, would have prevented the Government from obtaining a warrant.

The events culminating in the issuance of the warrant started early in the morning

**Memorandum Decision & Order - 1**

of March 21, 2011, when Payette Police Officers responded to a 911 call from Charlene Scales reporting a shooting at her trailer home. Scales was the girlfriend of the shooting victim, Emmett Mills, who sustained a leg wound.

Both Mills and Scales told the Officers that the attacker knocked on the door of their trailer at about 4:20 a.m., asking for Jessica and identifying himself as "McDog" (or "Mick-Dog" as stated in some Officers' reports). Mills opened the front door and "McDog" tried to push his way into the trailer. Mills pushed "McDog" out the door into a second assailant waiting outside who was wearing a clown mask and holding an assault rifle. The masked assailant fired two shots; one bullet struck Mills in the left leg. Both the intruder and the masked assailant ran from the scene immediately after firing the gunshots.

During the attack, Scales was sitting at her computer. The front door of the trailer opened toward her, and thus the door itself partially blocked her view, but she saw the intruder through the crack between the door and the wall where the door's hinges were attached. She did not know the attacker but saw that he was a Hispanic male wearing dark clothing and speaking clear English. The police reports do not indicate that Scales provided any identifying tattoos or other markings on the intruder, and she could not describe the other assailant. Mills stated he did not know either of his attackers. He described the intruder as a Hispanic male, in his 30's with short hair, and the other assailant as wearing a clown mask.

While interviewing witnesses and looking for evidence at the crime scene, the

Officers concluded that, as they put it in their report, "some information was being withheld by the subjects involved." So they obtained consent to search the trailer for weapons. Although they were told there were no weapons, they found a .357 Ruger handgun and drug evidence.

This was not the first time the Payette Police had been called to this trailer. About a month earlier, police undercover agents had purchased methamphetamine there from Mills and Scales. On at least two occasions before the break-in, undercover agents had purchased methamphetamine from Scales at the trailer.

Later on the same day of the shooting – March 21, 2011 – Detective Walker of the Payette City Police, acting undercover and wearing a wire, purchased 3.5 grams of methamphetamine from Scales. Listening nearby to the wire transmission was Officer KayAnn Smith. As Detective Walker left Scales' residence, and confirmed by text to Officer Smith that the deal took place, Officer Smith and three other Officers confronted Scales, who admitted to the drug dealing, and expressed a willingness to cooperate to reduce the impact of the charges against her. She consented to a search of her residence, and Officers discovered another 10.9 grams of methamphetamine and 20 Norco pills. Officer Smith states in her report that "[Scales] advised that she wanted to fully cooperate and was advised consideration could be given for her charges."

Two days later, on March 23, 2011, Detectives Smith, Freeman, and Plaza showed a photo line-up to Scales that included a photograph of Cantu-Ruiz. Scales identified Cantu-Ruiz as the person who fought his way into her trailer. When asked by the officers

Memorandum Decision & Order - 3

how sure she was of that identification, "she said she was 90% sure this was the person."

That same day – March 23, 2011 – the Officers went before Idaho Magistrate Judge A. Lynne Krogh to obtain a search warrant for the residence of Cantu-Ruiz. At the hearing, Officer Plaza testified that (1) Mills and Scales stated that the attacker identified himself as "McDog," an alias that had been used by Cantu-Ruiz in the past, according to his criminal history file; and (2) Scales had identified Cantu-Ruiz from a photo line-up as the attacker. The Magistrate Judge issued the warrant, and in searching Cantu-Ruiz's residence pursuant to that warrant, the Officers discovered the weapon that forms the basis for the felon-in-possession charge in this case.

Cantu-Ruiz argues that Scales' credibility was indispensable to the finding of probable cause, and yet Officer Plaza failed to inform the Magistrate Judge about key facts bearing directly on Scale's credibility such as her drug history and her agreement to cooperate with law enforcement. Cantu-Ruiz argues that these and other omissions should result in the warrant being deemed invalid and the weapon being suppressed.

## ANALYSIS

The Court must determine if Officer Plaza intentionally or recklessly omitted facts to obtain the warrant at issue here. *Franks v. Delaware,* 438 U.S. 154 (1978). If so, the Court must then determine if the omissions misled the Magistrate Judge into finding that probable cause existed for the warrant. *United States v. Stanert*, 762 F.2d 775 (9th Cir.), amended by 769 F.2d 1410 (9th Cir.1985). "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be

Memorandum Decision & Order - 4

misled in such a manner could denude the probable cause requirement of all real meaning." *Id.*

The testimony at the evidentiary hearing established that Officer Plaza knew – before the warrant hearing – that Scales had (1) used and sold drugs, and (2) verbally agreed to act as a confidential informant. Officer Plaza did not reveal these facts to the Magistrate Judge at the warrant hearing.

Officer Plaza took a substantial risk in failing to reveal these facts to the Magistrate Judge. For example, if Scales was implicating Cantu-Ruiz as her source of illegal drugs, and Officer Plaza failed to reveal Scales' prior drug dealing and cooperation agreement, this Court would have no choice but to declare the warrant invalid. *See United States v. Hall,* 113 F.3d 157 (9th Cir.1997). In *Hall*, the police obtained a warrant based on the testimony of an informant who had been caught with drugs and was identifying his source. In obtaining the warrant, the police omitted facts about the informant's criminal history of dishonest conduct. The Circuit threw out the warrant, finding the omissions misleading because, if revealed, they "suggested the possibility that [the informant] would lie to police to frame an innocent man." *Id*. at p. 160.

Given Officer Plaza's knowledge, the Court finds that he acted recklessly in failing to reveal Scale's drug use and cooperation agreement to the Magistrate Judge. This does not mean, however, that the warrant is invalid; the warrant falls only if the reckless omissions could have misled the Magistrate Judge into finding that probable cause existed for the warrant.

**Memorandum Decision & Order - 5**

That is not the case here. Scales' drug history, and her cooperation with police, cast no doubt on her identification of Cantu-Ruiz in the photo lineup, especially since she was implicating Cantu-Ruiz in a crime – the shooting – that the police already knew had taken place. This is not a case like *Hall* where the informant had a clear incentive to "create" a crime and "deliver" a perpetrator to the police in order to obtain leniency. In Scale's case, the shooting had taken place, and Scales was merely identifying the attacker from a photo line-up.

Moreover, Scales cooperation agreement with the police concerned a separate drug charge. Whatever benefits she expected from that agreement, there is no evidence that she would benefit from inaccurately identifying her attacker. *See [U.S. v. Patayan Soriano, 361 F.3d 494, 505 (9th Cir.2004)](#)* (upholding warrant based on informant's tip where informant would not get lenient treatment "if he gave false information . . ., [which] further served to corroborate its reliability").

It was Scales' presence and position in the trailer on the night of the attack that bore directly on her identification of Cantu-Ruiz, rather than her drug history or cooperation agreement. If Officer Plaza omitted material facts concerning Scales' ability to see the intruder, his testimony might have misled the Magistrate Judge into finding probable cause.

On this point, Officer Plaza, at the warrant hearing, described Scales as being "just inside the door. The door opened towards her . . . ." *See Transcript (Dkt. No. 19-5)* at p. 6. From this, the Magistrate Judge could infer that the door at least partially blocked

**Memorandum Decision & Order - 6**

Scales' view, and could have inquired further about that fact. There was nothing misleading here about Officer Plaza's testimony.

There are other omitted facts, however, about Scales' ability to see Cantu-Ruiz that do concern the Court. About three weeks after the warrant hearing, Scales testified at a preliminary hearing about the earlier photo line-up where she identified Cantu-Ruiz as the intruder. Specifically, she was asked whether she "was able to identify any of the people in the photographs" as the intruder, and she answered as follows: "I told them that there's two that I could pick out, you know. By the thing on his face, I picked out one of them and –." *See Transcript (Dkt. No. 19-4)* at p.26.

From this testimony, it appears that Scales told Officer Plaza – during the photo line-up session – that she could pick two of the photos as depicting the intruder. Officer Plaza did not reveal that to the Magistrate Judge. It also appears that Scales distinguished between the two photos by "the thing" on Cantu-Ruiz's face. Although Officer Plaza did not reveal this to the Magistrate Judge, it is unclear whether Scales ever told Officer Plaza how she was distinguishing between the photos. The Court will assume that Officer Plaza knew this fact and failed to reveal it to the Magistrate Judge.

The Court will further assume that it was reckless to fail to inform the Magistrate Judge that Scales (1) could have picked out two of the photos as depicting the intruder, and (2) distinguished between them by the "thing" on Cantu-Ruiz's face. Nevertheless, the Court cannot find that this failure was misleading in any way. Ultimately, Scales told Officer Plaza that she was "90% sure" that the photo of Cantu-Ruiz accurately depicted

**Memorandum Decision & Order - 7**

the intruder, and Officer Plaza testified to this at the warrant hearing. Thus, Scales had worked through the identification in her mind and was not wavering between two photos.

Moreover, the Magistrate Judge heard evidence corroborating Scales' identification – Officer Plaza testified that Cantu-Ruiz had, on past occasions, used the alias "McDog," the same name used by the intruder on the night of the attack. Thus, the two omissions regarding picking out two photos and distinguishing them by a facial feature would not have affected the Magistrate Judge's decision.

Also bearing on the accuracy of Scales' identification was an account given by a neighbor that differed from Scales' account. At the warrant hearing, Officer Plaza accurately described the neighbor's account so that the Magistrate Judge had both versions before her. When all the circumstances are considered together, the Court finds that Officer Plaza did not mislead the Magistrate Judge by omitting material facts about Scales' ability to see the intruder on the night of the attack.

Under these circumstances, the Court can find no reason to strike down the warrant. Accordingly, the Court will deny the motion to suppress.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 18) is DENIED.

DATED: **April 25, 2012**



_/s/ B. Lynn Winmill_
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 9**